IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CROWN PACKAGING TECHNOLOGY,  :
INC., et al.,                :

      Plaintiffs,           :
                              Case No. 3:05cv281
      vs.                  :
                        JUDGE WALTER HERBERT RICE
BALL METAL BEVERAGE          :
CONTAINER CORP.,             :

      Defendant.            :

_____

DECISION AND ENTRY SUSTAINING IN PART, OVERRULING IN PART
AND OVERRULING, AS MOOT, IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON INFRINGEMENT AND INVALIDITY
(DOC. #60); DECISION AND ENTRY SUSTAINING IN PART AND
OVERRULING IN PART PLAINTIFFS' CROSS MOTION FOR PARTIAL
SUMMARY JUDGMENT ON INVALIDITY (DOC. #70); DECISION AND
ENTRY OVERRULING, AS MOOT, DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON WILLFULNESS (DOC. #80);
JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND
AGAINST PLAINTIFFS; TERMINATION ENTRY

_____

The Plaintiffs bring this litigation, alleging that the Defendant has infringed

on certain claims set forth in two patents owned by Plaintiff Crown Packaging

Technology, Inc., and licensed to Plaintiff Crown Cork & Seal, Inc.,[1] to wit: U.S.

Patent Nos. 6,935,826 ("the '826 patent") and 6,848,875 ("the '875 patent").

_____

[1]This Court will refer to those two entities collectively as "Plaintiffs."

These two patents relate to the ends of metal beverage cans used for beer and soft drinks and the method of securing the ends of the cans onto the bodies of the cans,[2] which the parties and the patents refer to as seaming.  In particular, the Plaintiffs have alleged that the Defendant is infringing on claim 14 of the '826 patent and claims 50, 52 and 61 of the '875 patent.  According to the Plaintiffs, these patents allow a significant saving in the amount of metal necessary for can ends, without requiring an enormous outlay of capital, thus cutting costs for users.  See Doc. #23 at 2-3, 4.  Plaintiffs state that the two patents accomplish that end by altering the geometry of the can end and modifying the seaming process.  Id. at 4.  Plaintiffs indicate that metal is saved, because the new geometry increases the strength of the can ends, permitting them to be thinner.  Id. at 6.

In their Amended Complaint (Doc. #7), the Plaintiffs set forth three claims for relief, to wit: 1) a claim that Defendant is infringing upon claims 50, 52 and 61 of the '875 patent (Count I); 2) a claim that the Defendant is infringing on claim 14 of the '826 patent (Count II); and 3) a claim for declaratory judgment of infringement on claim 14 of the '826 patent (Count III).  In addition to denying that it has infringed upon claim 14 of the '826 patent and claims 50, 52 and 61 of the '875 patent, the Defendant has submitted a six-count Counterclaim, setting forth requests for declaratory relief that it has not infringed upon either of the patents-in-suit, that both such patents are invalid and that both are unenforceable due to inequitable conduct.  See Doc. #11.

---

[2]Colloquially, a can end is referred to as the top of a can.

The typical beverage can is constructed from two parts, a can end and a can body, each of which is manufactured separately.[3]  Plaintiffs and Defendant are competitors in the business of selling can ends and bodies to fillers.[4]  The can body is filled with beer or another type of carbonated beverage, and the can end is seamed onto the body.  As shown by drawings of prior art and explanations contained in the two patents-in-suit, in conventional seaming operations, a chuck holds a can top on a can body against the support provided by a lifter plate.  The can body and end are then rotated at high speed.  While that rotation is occurring, two seaming rolls are successively moved toward the chuck and can end.  The seaming rolls form the seam by bending and compressing the uppermost portion of the can body and the outermost portion of the can end together.  The finished seam, which is referred to as a "double seam," is comprised of five interlocking layers of metal, three from the can end and two from the can body.  The '826 patent addresses can ends, while the '875 patent is directed at the seaming process.[5]

_____

[3]A can body includes the sides and bottom of a can, while its top is the can end.

[4]In Crown Packaging Technology, Inc. v. Rexam Beverage Can Co., 559 F.3d 1309 (Fed. Cir. 2009), the Federal Circuit described the use to which fillers put end ends and bodies:

> Fillers are companies that fill cans with fluids such as soda or beer. Generally, beverage cans are sold to fillers in two parts, can bodies and can ends.  The can bodies are the cylindrical-shaped portions that hold the beverages and the can ends are the can tops.  Fillers first fill the can bodies with the desired beverage, and then seal the can ends to the can bodies.

Id. at 1310 n. 1.

[5]The foregoing discussion of the conventional manner in which a can end is attached to a can body is described by drawings of prior art, Figures 1, 2 and 3, of the '826 patent and the identical drawings, Figures 1, 2 and 3, of the '875 patent. Figure 1 shows the assembly of the can body on the lifter plate, the can end on

This case is currently before the Court on the following motions seeking partial summary judgment by the parties, to wit: 1) Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60); 2) Plaintiffs' Cross Motion for Partial Summary Judgment on Invalidity (Doc. #70);[6] and 3) Defendant's Motion for Partial Summary Judgment on Willfulness (Doc. #80).[7] On December 5, 2008, this Court heard two hours of oral argument from the parties on Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60) and Plaintiffs' Cross Motion for Partial Summary Judgment on Invalidity (Doc. #70). As a means of analysis, the Court will initially set forth the procedural standards it must apply whenever it rules on a request for summary judgment, partial or otherwise. The Court will then rule upon the first two motions listed above, discussing them together. In the event that some or all of Plaintiffs' claims survive Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60), the Court will then turn to the Defendant's Motion for Partial Summary Judgment on Willfulness (Doc. #80).

---

top of the can body, the chuck on top of the can end and one seaming roll at either side of the assembly. Figure 2 shows in detail the can end and the chuck, while Figure 3 illustrates a completed double seam. Those three drawings describe prior art, rather than the '826 and '875 patents.

[6]Plaintiffs' cross motion seeking partial summary judgment also serves as their memorandum opposing Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60).

[7]In its Opinion of April 21, 2008, this Court construed the disputed portions of the claims of the '826 and '875 patents, which are at issue in this litigation. See Doc. #53.

I.  Procedural Standards Applicable to Motions Seeking Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a

matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.  Anderson, 477 U.S. at 255 (emphasis added).  If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more

credible; rather, credibility determinations must be left to the fact-finder.  10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726.  In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).  See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment …").  Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

II.  Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60) and Plaintiffs' Cross Motion for Partial Summary Judgment on Invalidity (Doc. #70)

Defendant has moved for summary judgment, arguing that claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid, because they are indefinite, fail to comply with the written description requirement, are anticipated and are obvious.  The Plaintiffs not only disagree with the Defendant's proposition that it is entitled to summary judgment on the basis of invalidity, they also contend

that they are entitled to summary judgment on two of those four asserted bases of invalidity, to wit: indefiniteness and the failure to comply with the written description requirement.  Alternatively, Defendant argues that it is entitled to summary judgment, because the evidence fails to raise a genuine issue of material fact as to whether its products infringe on claim 14 of the '826 patent and/or claims 50 and/or 52 of the '875 patent.  Plaintiff, in contrast, asserts that the evidence raises such an issue of fact.  As a means of analysis, this Court will initially rule on the parties' motions as they relate to invalidity, addressing the four grounds for same in the above order.  If the Court concludes that any one or more or all of the claims of the two patents at issue in this litigation survive the Defendant's request for summary judgment on the basis of invalidity, it will turn to the branch of the Defendant's motion in which it argues that it is entitled to summary judgment, because its products do not infringe on claim 14 of the '826 patent and claims 50 and 52 of the '875 patent.  If, however, this Court concludes that the Defendant is entitled to summary judgment on the basis of those claims being invalid, it will overrule, as moot, the branch of that motion raising the issue of infringement.[8]

---

[8]As is indicated above, the Plaintiffs also allege that the Defendant's products infringe on claim 61 of the '875 patent, which is dependent upon claim 50 of that patent.  In their memoranda in support of and in opposition to the currently pending requests for summary judgment, the parties have not separately addressed claim 61.  Nevertheless, since that claim is dependent on claim 50, the Court will award summary judgment on an issue pertaining to claim 61 to the same extent that it determines Defendant or Plaintiffs are or are not entitled to summary judgment on that issue as it relates to claim 50.  For instance, therefore, if this Court were to conclude that claim 50 is not invalid for indefiniteness, it would reach the same conclusion with respect to claim 61.  Accordingly, independent discussion of dependent claim 61 of the '875 patent will be a rarity herein, as it is in the parties' memoranda.

A.  Invalidity

As indicated, the Defendant has argued that claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid for reasons of indefiniteness, failing to comply with the written description requirement, being anticipated and obviousness.  The Plaintiff also seeks summary judgment on the first two of those four bases for invalidity.  As a means of analysis, the Court will address the four in the above order.  However, before engaging in that analysis, it bears noting that every patent is entitled to a statutory presumption of validity.  See 35 U.S.C. § 282.  Thus, the Federal Circuit has held that "[i]t is well established that a patent is presumed valid, and 'the burden of persuasion to the contrary is and remains on the party asserting invalidity.'  Ralston Purina Co. v. Far-Mar-Co, Inc., 772 F.2d 1570, 1573 (Fed. Cir. 1985)."  PowerOasis, Inc. v. T-Mobile, USA, Inc., 522 1299, 1303 (Fed. Cir. 2008).  Indeed, the Federal Circuit has explained that evidence establishing invalidity must be clear and convincing.  Medical Instrumentation and Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1220 (Fed. Cir. 2003), cert. denied, 541 U.S. 959 (2004); Schumer v. Laboratory Computer Systems, Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2002).

1.  Invalidity for Indefiniteness

The prohibition against the claims of a patent being indefinite stems from 35 U.S.C. § 112 ¶ 2, which provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  Whether a claim is invalid for indefiniteness is a question of law.  Technology Licensing Corp. v. Videotek, Inc.,

545 F.3d 1316, 1338 (Fed. Cir. 2008).  To the extent that the District Court's conclusion concerning indefiniteness is predicated upon factual findings, the party challenging the patent must establish those facts by clear and convincing evidence. Id.  "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude."  Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005).  In Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371 (Fed. Cir. 2001), the Federal Circuit noted that a claim will be held to be invalid for indefiniteness only if it "is insolubly ambiguous, and no narrowing construction can properly be adopted…," and that "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."  Id. at 1375.  Thus, in Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306 (Fed. Cir. 2008), the Federal Circuit rejected the defendant's indefiniteness challenge to plaintiff's patent, even though the patent's specification "may not be a model of clarity."  Id. at 1321.  In the context of concluding that a defendant's counterclaim, alleging that the plaintiff's patent was invalid for indefiniteness, was not moot merely because the District Court had concluded that the defendant's products did not infringe upon the plaintiff's patent, the Federal Circuit noted that "patent infringement and patent invalidity are treated as separate issues."  Pandrol USA, LP v. Airboss Ry. Products, 320 F.3d 1354, 1364 (Fed. Cir. 2003).  In addition, the Federal Circuit recently reiterated that, since indefiniteness and infringement are analytically distinct, "[t]he test for indefiniteness does not depend on a potential

infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1373 (Fed Cir. 2008) (internal quotation marks and citation omitted), cert. denied, 129 S.Ct. 1529 (2009). Accord, SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1340-41 (Fed. Cir. 2005), cert. denied, 547 U.S. 1218 (2006). In Halliburton Energy Services, Inc. v. M-1 LLC, 514 F.3d 1244 (Fed. Cir. 2008), the Federal Circuit, after cataloging the decisions in which that court has concluded that a patent is invalid for indefiniteness, noted that "[t]he common thread in all of these cases is that claims were held indefinite only where a person of ordinary skill in the art could not determine the bounds of the claims, i.e., the claims were insolubly ambiguous." Id. at 1249. The Federal Circuit has repeatedly held that:

> Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent. Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims.

Id.

Herein, both the Plaintiffs and the Defendant move for summary judgment on the question of whether the claims at issue in this litigation are invalid for indefiniteness. In its Motion for Summary Judgment on Invalidity and Infringement (Doc. #60), Defendant explains the basis of its request for summary judgment on the question of indefiniteness:

> Each asserted claim requires the measurement of an angle (from vertical) of a hypothetical line which must be created by locating and connecting two hypothetical points on a cross-section of the accused can

end.  The lower of these points is where the can end's "wall" abuts the can
end's "annular reinforcing bead."

Doc. #60 at 2.  Defendant also points out that, during the Markman process, it had

argued that the Plaintiffs' proposed construction of the term "annular reinforcing

bead" was so vague that one could not plot the hypothetical line and determine

whether the angle from vertical was within the range forbidden by the asserted

claims.  Id. at 2-3.  In addition, Defendant notes that this Court, while adopting a

modified version of the construction of that term proposed by Plaintiffs, indicated

that it had not determined whether the term "annular reinforcing bead" is

sufficiently definite to satisfy § 112.[9]  Id. at 3.  In response, the Plaintiffs assert

that the Defendant is not entitled to summary judgment on the issue of

indefiniteness, given that Defendant's arguments relate to infringement (i.e., the

factual question of whether the asserted claims can be applied to its (Defendant's)

products), rather than the legal question of whether the claims at issue in this

litigation have been set forth with the requisite definiteness.  See Doc. #70 at 5-8.

Based upon the following, this Court concludes that the Plaintiffs are entitled to

summary judgment on the question of whether claim 14 of the '826 patent and

claims 50 and 52 (and therefore claim 61) of the '875 patent are invalid for

indefiniteness.

     Claim 14 of the '826 patent and claims 50 and 52 of the '875 patent

contain limitations concerning the size of an angle which is determined by locating

two points on a cross section of the can end, connecting the two points with a

---

[9]In its Opinion on claim construction, the Court held that "annular reinforcing bead"
is an "outwardly concave, generally 'U' shaped, ring-like stiffening channel."
Doc. #53 at 34.

hypothetical line and then measuring the line from vertical.[10]  The lower of those two points is where the can end's wall abuts the can end's "annular reinforcing bead."  On the '826 patent, the lower point is referred to as the "second point," while the '875 patent uses the term "transition" to describe that point.  This Court has construed the phrase "annular reinforcing bead" to mean an "outwardly concave, generally U shaped, ring-like stiffening channel."  Doc. #53 at 34 (internal quotation marks omitted).

Defendant contends that, given the vagueness of the term "annular reinforcing bead," it is impossible to locate a single second point/transition, to measure the angle on a competing product and, thus, to determine whether the can-end of such a product infringes.  See Doc. #60 at 3-4.  In response, Plaintiffs not only argue that the Defendant is not entitled to summary judgment, but also

---

[10]Claim 14 is dependent on claim 13.  The latter provides in pertinent part:
> a second portion of said wall extending from said first point to a second point forming a lowermost end of said wall, a line extending between said first and second points being inclined to an axis perpendicular to said central panel at an angle of between 30° and 60°.

'826 patent, Col. 10, lines 57-61.  Claim 14 of the '826 patent provides:
> 14.  The end according to claim 13, further comprising an annular reinforcing bead connected to said wall at said second point, said annular reinforcing bead connecting said wall to said central panel.

'826 patent, Col. 10, lines 62-65.  Claim 50 of the '875 patent provides in relevant part:
> a straight line extending from said first location on said can end wall to said transition between said can end wall and said reinforcing bead inclined between about 20° and about 60° with respect to said axial centerline both before and after said seaming operation.

'875 patent, Col. 15, lines 36-41.  Claim 52 of the '875 patent provides:
> 52. The method according to claim 50, wherein said line extending from said first location to said transition is inclined between about 30° and about 50° with respect to said axial centerline of said can end both before and after performing said seaming operation.

Id. at Col. 15, lines 46-50.

that they are entitled to summary judgment on the issue of whether the '826 and '875 patents are invalid for being indefinite, because the phrase "annular reinforcing bead" is vague.  In support of their assertion, Plaintiffs cite the Rebuttal Report of their expert witness, Martin Higham ("Higham").[11]  <u>See</u> Doc. #70 at 6. In contrast, Defendant supports its request for summary judgment on this issue with citations to Higham's deposition testimony.  <u>See</u> Doc. #60 at 4-9.

Without resolving the parties' dispute over whether evidence from Higham entitles one or the other or neither to summary judgment on this issue, this Court concludes the Plaintiffs are entitled to summary judgment on the question of whether claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid due to indefiniteness as a result of the vagueness of the term "annular reinforcing bead."  This Court bases its conclusion in that regard on the recent decision by the Federal Circuit in <u>Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.</u>, 559 F.3d 1309 (Fed. Cir. 2009).  Therein, the court concluded that the evidence raised a genuine issue of material fact as to whether the defendant's can ends infringed upon claim 14 of the '826 patent, since there was such a fact question concerning the purpose of the annular reinforcing bead.[12]  In

---

[11]Higham's Rebuttal Report is Exhibit B to Doc. #70.

[12]Therein, the question was whether the defendant's accused product infringed under the doctrine of equivalents.  The <u>Rexam</u> court noted that the plaintiff could demonstrate such infringement by showing, on a limitation-by-limitation basis, that "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product."  559 F.3d at 1312.  Therefore, the function of the annular reinforcing bead was paramount therein, although it is not pertinent to the question of whether the asserted claims are invalid for indefiniteness.

the course of reaching that conclusion, the Federal Circuit noted the manner in which the annular reinforcing bead was described on the '826 patent:

> The [annular reinforcing] bead of figure 4–which appears as a groove covering the outer circumference of the can top–is identified by reference to numeral 25.  Once a can body is filled, a can top is placed on top of the body, where it is secured in place. The can top is then sealed-or-seamed-to the can body as shown in figures 6 and 7 ….

Id. at 1313.  In addition, the drawings designated Figures 6 and 7 on the '826 patent also show the annular reinforcing bead.  Quite simply, the ability of the Federal Circuit to identify and to describe the annular reinforcing bead on the drawings of the '826 patent belies Defendant's assertion that the term is so ambiguous it renders that patent invalid for indefiniteness.  Although the Federal Circuit was addressing the '826 patent in Rexam, the '875 patent contains drawings which are identical to Figures 4, 6 and 7 set forth on the '826 patent.  Consequently, this Court concludes that the analysis of the Federal Circuit therein is equally applicable to the '875 patent.

Based upon the foregoing, this Court overrules Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60) and sustains Plaintiffs' Cross Motion for Partial Summary Judgment on Invalidity (Doc. #70), as those motions relate to the question of whether the asserted claims of the '826 and '875 patents are invalid for indefiniteness, thus concluding that there is no genuine issue of material fact on whether the asserted claims of the '826 and '875 patents are invalid for indefiniteness and that said claims are not invalid for that reason.[13]

---

[13]Included among those claims is claim 61 of the '875 patent.  See Footnote 7, supra.

2.  Invalidity for Failure to Comply with the Written Description Requirement

As indicated above, both Plaintiffs and Defendant seek summary judgment on the issue of whether claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid, because of the failure to comply with the written description requirement.  As a means of analysis, the Court will initially set forth the governing legal standards, following which it will turn to the parties' arguments in support of their respective requests for summary judgment on this asserted basis of invalidity.

The written description requirement is contained in the first paragraph of 35 U.S.C. § 112, which is emphasized in the following quotation of that paragraph:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

In Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358 (Fed. Cir. 2009), the Federal Circuit discussed the written description requirement:

> "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not...." Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003).  To satisfy the written description requirement, the disclosure of the specification must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of the invention." Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).  "[U]nder proper circumstances, drawings alone may provide a 'written description' of an invention as required by § 112." Id. at 1565; see also Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc., 291 F.3d 1317, 1322 (Fed. Cir. 2002) ("Drawings constitute an adequate description if they describe what is claimed and convey to those of skill in the art that the patentee actually invented what is claimed.").

Id. at 1366.  See also, Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co., 560 F.3d 1366, 1371 (Fed. Cir. 2009) (noting that the written description requirement "serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed" and that it "serves a teaching function, as a quid pro quo in which the public is given meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time") (internal quotation marks and citations omitted); Carnegie Mellon Univ. v. Hoffmann-La Roche Inc., 541 F.3d 1115, 1122 (Fed. Cir. 2008) (noting that "[t]o satisfy the written description requirement, the applicant does not have to utilize any particular form of disclosure to describe the subject matter claimed, but the description must clearly allow persons of ordinary skill in the art to recognize that he or she invented what is claimed" and that "the applicant must convey with reasonable clarity to those skilled in art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent") (internal quotation marks and citations omitted).  The Federal Circuit has indicated that "[t]he invention is, for purposes of the 'written description' inquiry, whatever is now claimed." Vas-Cath, Inc. v. Mahurkar, 935 F.3d 1555, 1564 (Fed. Cir. 1991) (emphasis in the original).  Whether there has been compliance with the written description requirement is a question of fact, rather than being a question of law.  Id. at 1563.  See also PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1306-07 (Fed. Cir. 2008) (explaining that § 112, ¶ 1 "requires that the written description actually or inherently disclose the claim element").

Herein, the Defendant bases its request for summary judgment on the question of whether claim 14 of the '826 patent and claims 50 and 52 of the '875 patent comply with the written description, in part, on the decision of the District Court in Crown Packaging Technology, Inc. v. Rexam Beverage Can Co., 531 F. Supp.2d 629 (D.Del. 2008), reversed in part on other grounds, 559 F.3d 1308 (Fed. Cir. 2009).  In that litigation, the Plaintiffs in this lawsuit alleged, inter alia, that Rexam's products were infringing on claim 34 of the '875 patent.  Concerning that claim, the District Court held that the '875 patent's specification was clear that the invention required an annular reinforcing bead; however, since that court's construction of claim 34 did not require such a bead, the District Court concluded that this claim was broader than the invention set forth in the specification and that, therefore, claim 34 violated the written description requirement contained in the first ¶ of § 112.  531 F. Supp.2d at 634-39.  Since the Plaintiffs did not challenge on appeal the holding of the District Court that claim 34 of the '875 patent was invalid for failing to comply with the written description requirement, the Federal Circuit did not address that issue.[14]  However, since the Defendant has not argued that any of the claims at issue in this litigation violate the written description requirement, because they do not include the limitation of an annular reinforcing bead, this Court does not consider the decision of the District Court in Rexam Beverage Can Co. to be persuasive.

------

[14]The District Court awarded summary judgment to Rexam on the claim that it was infringing on claim 14 of the '826 patent, concluding that the evidence failed to raise a genuine issue of material fact as to whether Rexam's products infringed on that claim.  The Federal Circuit reached the opposite conclusion and reversed the District Court's award of summary judgment.  559 F.3d at 1314-15.  The Federal Circuit also reversed the District Court's grant of summary judgment to plaintiffs on Rexam's counterclaim that they were infringing on its patent.  Id. at 1316-17.

Additionally, the Defendant argues that it is entitled to summary judgment, because the specifications of the '826 and '875 patents describe, respectively, a can end and a method of seaming where the chuck only engages and drives the can end wall, instead of driving or even entering deeply into the annular reinforcing bead, as had been the case with prior art.  Doc. #60 at 32.  In support thereof, Defendant points to the discussion concerning Figure 5 set forth in the specifications of the two patents-in-suit:

> In contrast to the chuck of FIG. 2[,] the modified chuck 30 is designed to drive initially on the relatively large chuck wall 32 without entering deeply into the anti-peaking bead 25.

'826 patent, Col. 4, lines 59-62.[15]  The specification for the '875 patent contains the same language in its discussion of Figure 5.  See '875 patent, Col. 4, lines 38-41.  Figure 2 shows prior art.  This Court's review of those specifications for the '826 and '875 patents causes it to conclude that neither described an invention in which the chuck would interface with the can end in such a manner that the chuck would enter deeply into the reinforcing bead during the seaming process.  In contrast, the discussion in the specifications of the two patents, of the prior art depicted in Figure 2, as well as Figure 2 itself, describe and show a chuck that enters deeply into the can end's reinforcing bead.  See '826 patent, Col. 3, lines 42-45; '875 patent, Col. 3, lines 27-30.  Figure 5, which depicts the claimed invention, shows the chuck that does not enter the can end's reinforcing bead.  Moreover, the specifications highlight the anticipated benefits of the claimed invention over prior art, as a result having a chuck that does not enter the

---

[15]The "anti-peaking bead" referred to in the quoted passage from the '826 patent is used as a synonym for the "annular reinforcing bead."  See Rexam, 559 F.3d at 1312 n. 6.

reinforcing bead of the can end.  See '826 patent, Col. 4, line 65 to Col. 5 line 3;

'875 patent, Col. 4, lines 42-47 ("The chuck 30 shown in FIG. 5 has an annular

bead [which has not been labeled on that drawing] of arcuate cross section but this

bead is designed to enter the chuck wall without scratching or scuffing a coating

on the can end; not to drive on the concave bead surface as shown in FIG. 2.").

   Plaintiffs, on the other hand, point to the deposition testimony of

Defendant's expert witness, Dean Scranton ("Scranton"), wherein he testified that

he could apply claim 13 of the '826 patent to Figure 4 of that patent.[16]  Plaintiffs

also cite Higham's Supplemental Rebuttal Report, wherein he opined that the '826

and '875 patents comply with the written description requirement.  His opinion in

that regard had two bases, to wit: that patents are presumed to be valid and that

he disagreed with Scranton concerning certain aspects of those patents.  Doc. #69

at Ex. D, p. 54.  Higham's statement that patents are presumed to be valid is a

statement of the law, rather than constituting evidence.  It is axiomatic that

witnesses are not permitted to testify as to the applicable legal standards, given

that it is the function of the judge to determine the applicable law and to instruct

the jury on same.  United States v. Zipkin, 729 F.2d 384, 386-87 (6th Cir. 1984).

Moreover, Higham's statement that the Plaintiffs' patents comply with the written

description requirement, without more, is the type of conclusory statement by an

expert witness which does not raise a genuine issue of material fact.  See McLean

_____

[16]Plaintiffs also cite the portion of Scranton's deposition testimony where he was
asked whether he had "an opinion as to whether claim 13 covers the embodiment
shown in Figure 4?"  Scranton August 20, 2008 Dep. at 81, lines 15-16.
Scranton replied "I would believe so, yes."  Id. at line 17.  Plaintiffs' counsel did
not ask the follow up as to what that opinion might have been.  Simply stated,
Scranton's deposition testimony that he has an opinion regarding that topic,
without indicating what that opinion might be, is of no probative value.

v. 988011 Ontario, Ltd., 224 F.3d 797, 800-01 (6th Cir. 2000) (noting that "an expert's opinion must be supported by more than subjective belief and unsupported speculation").  Higham also indicated in his Supplemental Rebuttal Report that he disagrees with Scranton's statements that the specifications of the '826 and '975 patents do not contain adequate written descriptions of the "first location" and the "second location."  Doc. #69 at Ex. D, p. 54-55.  Since the Defendant has not based this branch of its motion on that alleged violation of the written description requirement, Higham's statements in that regard are not pertinent to the parties' requests for summary judgment on the question of whether that requirement invalidates the patents.

In support of its request for summary judgment on the basis of Plaintiffs' asserted failure to comply with the written description requirement, Defendant relies upon Tronzo v. Biomet, Inc., 156 F.3d 1154 (Fed. Cir. 1998).  Therein, the Federal Circuit held that two claims of the patent-in-suit were not entitled to the filing date of an earlier parent application, because the earlier application had failed to comply with the written description requirement, given that it failed to "convey to one of skill in the art that the inventor possessed the later-claimed subject matter at the time the parent application was filed."[17]  Id. at 1158.  Those two claims dealt with artificial hip sockets, including cup implants adapted to be inserted into the hip bone.  The defendant argued that the parent application failed to comply with the written description requirement, since that application described a conically shaped cup, while the two claims of the patent-in-suit

---

[17]Since those claims were not entitled to the filing date of the parent application, they were rendered invalid by intervening prior art.

addressed a generically shaped cup.  The Federal Circuit agreed, concluding that

the specification of the parent application distinguished itself from prior art as

inferior and touted the conical shape as superior and that, therefore, the parent

application described conically, rather than generically, shaped cups.  Id. at 1159.

Defendant also relies upon LizardTech, Inc. v. Earth Resource Mapping, Inc.,

424 F.3d 1336 (Fed. Cir. 2005), rehearing en banc denied, 433 F.3d 1373 (Fed.

Cir. 2006).  In ICU Medical, Inc. v. Alaris Medical Systems, Inc., 558 F.3d 1368

(Fed. Cir. 2009), the Federal Circuit recently discussed LizardTech:

> We addressed a similar issue in LizardTech, Inc. v. Earth Resource Mapping,
> Inc., 424 F.3d 1336 (Fed.Cir.2005), where a patent specification described
> a method of digital image compression.  Id. at 1337-39.  More specifically,
> the specification disclosed a method for creating a seamless discrete wavelet
> transform (DWT), whereby the image is divided into smaller tiles for
> calculation purposes and DWT is applied to each tile individually.  The
> disclosed method produces a seamless DWT because the output is
> essentially equivalent to the output that would result if DWT had been
> applied to the entire image.  Id. at 1339.  Claim 1 in LizardTech recited "[a]
> method for selectively viewing areas of an image at multiple resolutions in a
> computer," comprising a variety of steps of which one step was
> "maintaining updated sums of said DWT coefficients from said discrete tile
> image … to form a seamless DWT of said image."  Id. at 1340.  Claim 21
> recited the identical method, except that it did not contain two limitations,
> one of which was the "maintaining updated sums" limitation.  Id. at 1343.
> We explained that "the specification provides only one method for creating a
> seamless DWT, which is to 'maintain updated sums' of DWT coefficients.
> That is the procedure recited by claim 1.  Yet claim 21 is broader than claim
> 1 because it lacks the 'maintain updated sums' limitation."  Id. at 1344
> (concluding that "claim 21 refers to taking a seamless DWT generically").
> We determined, however, that "[a]fter reading the patent, a person of skill in
> the art would not understand how to make a seamless DWT generically and
> would not understand LizardTech to have invented a method for making a
> seamless DWT, except by 'maintaining updat[ed] sums of DWT
> coefficients.'"  Id.  at 1345.  We therefore concluded that claim 21 was
> invalid under the written description requirement of § 112, ¶ 1.  Id. at 1347
> (rejecting also LizardTech's argument that § 112 "requires only that each
> individual step in a claimed process be described adequately").

Id. at 1377-78.  In ICU Medical, the Federal Circuit concluded that the District
Court had appropriately granted summary judgment to defendant on so-called
"spikeless" claims in the patents-in-suit, because the patents violated the written
description requirement with respect to those claims.  The patents-in-suit related to
valves used in medical intravenous setups.  Certain claims were referred to as
"spikeless," because they did not include a spike limitation.  Relying on LizardTech,
the ICU Medical court held that the spikeless claims violated the written description
requirement, because the patents' specifications limited the plaintiff's inventions to
valves with spikes.[18]

        In support of their request for summary judgment on this issue and in
opposition to Defendant's request for same, Plaintiffs have cited a number of
decisions in which the Federal Circuit has held that a patent does not violate the
written description requirement, merely because the specifications do not disclose
all embodiments of the invention.  Thus, In LizardTech, the Federal Circuit also
noted:

> A claim will not be invalidated on section 112 grounds simply because the
> embodiments of the specification do not contain examples explicitly covering
> the full scope of the claim language.  That is because the patent
> specification is written for a person of skill in the art, and such a person
> comes to the patent with the knowledge of what has come before.  Placed
> in that context, it is unnecessary to spell out every detail of the invention in
> the specification; only enough must be included to convince a person of skill
> in the art that the inventor possessed the invention and to enable such a
> person to make and use the invention without undue experimentation.

424 F.3d at 1345.

---

[18]The decision of the Federal Circuit in ICU Medical belies the Plaintiffs' assertion
that no subsequent panel of the Federal Circuit has cited LizardTech for its analysis
of the written description analysis or its ultimate result.

In Bilstad v. Wakalopulos, 386 F.3d 1116, 1126 (Fed. Cir. 2004), a case relied upon by Plaintiffs, the Federal Circuit held that, under the factual circumstances of that litigation, the failure of the specifications to describe every embodiment of the claimed invention did not violate the written description requirement, noting that "disclosure of a species may be sufficient written description support for a latter claimed genus including that species." Id. at 1124. Bilstad was an appeal from a decision by the United States Patent and Trademark Office Board of Patent Appeals and Interferences ("Board") that the patent for which Bilstad had applied was invalid for lack of a written description.  In particular, the Board had concluded that the limitation in a claim, which required "a moveable member manipulating objects in a plurality of directions within the reactive volume wherein the manipulated objects are sterilized" (id. at 1119), was not supported by the written description.  The Board interpreted "plurality" as meaning an indefinite numerical range, bounded by two at the lower end and unbounded at the upper end.  Id.  The Board concluded that the foregoing limitation violated the written description requirement, because the specifications described manipulating objects in a small number of directions, rather than in a large number of directions.  Id.  The Federal Circuit concluded that the Board had applied the incorrect legal standard and remanded the matter to the agency for "a resolution of the question of whether Bilstad's disclosure of manipulation in a small number of directions would reasonably convey to a person skilled in the relevant art that Bilstad had possession of manipulation in a plurality of directions as of his filing date," since such a resolution "requires fact findings this court is not permitted to make." Id. at 1126.  The Bilstad court distinguished Tronzo, because

in Tronzo the Federal Circuit had noted that the specification of the patent-in-suit distinguished and labeled as inferior the prior art which included the "genus" that was being claimed, instead of asserting that the patent-in-suit encompassed that genus.  Id. at 1125.  See also Virginia Panel Corp. v. MAC Panel Corp., 133 F.3d 860, 866 (Fed. Cir. 1997) (a decision cited by Plaintiffs, in which the Federal Circuit noted, in the course of its claim construction, that "device claims are not limited to devices which operate precisely as the embodiments described in detail in the patent"); Falkner v. Inglis, 448 F.3d 1357, 1366 (Fed. Cir. 2006) (another decision cited by Plaintiffs, noting that it "is unnecessary to spell out every detail of the invention in the specification") (citation omitted), cert. denied, 549 U.S. 1180 (2007).

This Court concludes that the issue of whether Plaintiffs patents are invalid for violating the written description requirement must be resolved in accordance with the decisions by the Federal Circuit in Tronzo, LizardTech and ICU Medical.  In each of those decisions, the Federal Circuit held that a patent was invalid for violating the written description requirement, wherein the patentee, in the specifications, disclaimed or somehow limited the invention which he contended the defendant was infringing.  Consequently, this Court will not apply the decisions discussed above in which the Federal Circuit has held that a specification need not set forth every possible embodiment of the invention to comply with the written description requirement.  Like Tronzo, LizardTech and ICU Medical, the specifications for the '826 and '875 patents distinguish the prior art by highlighting the differences between the claimed invention and prior art.  Those matters are discussed above and will not be repeated here.  See Supra at 18-20.  Simply

stated, this Court concludes that, in accordance with the decisions of the Federal Circuit in Tronzo, LizardTech and ICU Medical, claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid for failure to comply with the written description requirement, because the only embodiment supported or disclosed by the written description is that the chuck drives on the can end wall and does not enter deeply into the annular reinforcing bead and, further, since that term has not been construed in a manner that clarifies that any part of the can end which is driven by the chuck is part of the can end wall, rather than being part of the annular reinforcing bead.  As a consequence, the asserted claims of the patents-in-suit improperly include methods for seaming can ends where the chuck drives the can end into the reinforcing bead.

Based upon the foregoing, the Court sustains the Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60) and overrules the Plaintiffs' Cross Motion for Partial Summary Judgment on Invalidity (Doc. #70), as those motions relate to the Defendant's assertion that claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid for failure to comply with the written description requirement contained in the first ¶ of § 112, thus concluding that there is no genuine issue of material fact on this issue and that said claims are invalid for that reason.[19]

---

[19]Of course, the Court's conclusion in that regard is equally applicable to claim 61 of the '875 patent.  See Footnote 8, supra.

3.  Invalidity for Anticipation

Herein, the Defendant argues that it is entitled to summary judgment on the question of whether claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid for reasons of anticipation.  Although not seeking summary judgment on this issue, the Plaintiffs request that the Court overrule this branch of the Defendant's motion, contending that the evidence raises a genuine issue of material fact on that question and that, therefore, the Defendant is not entitled to summary judgment.  As a means of analysis, the Court will initially set forth the substantive legal standards it must apply in determining whether the evidence raises a genuine issue of material fact the question of whether the pertinent claims in the '826 and '875 patents are invalid as anticipated.

Under 35 U.S.C. § 102, a person is not entitled to a patent, if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or … was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  In Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323 (Fed. Cir. 2008), the Federal Circuit has explained anticipation:

> Anticipation is a question of fact, reviewed for substantial evidence when tried to a jury.  Z4 Techs., Inc. v. Microsoft Corp., 507 F.3d 1340, 1347 (Fed. Cir. 2007).  If the claimed invention was "described in a printed publication" either before the date of invention, 35 U.S.C. § 102(a), or more than one year before the U.S. patent application was filed, 35 U.S.C. § 102(b), then that prior art anticipates the patent.  Although § 102 refers to "the invention" generally, the anticipation inquiry proceeds on a claim-by-claim basis.  See Hakim v. Cannon Avent Group, PLC, 479 F.3d 1313, 1319 (Fed. Cir. 2007).  To anticipate a claim, a single prior art

> reference must expressly or inherently disclose each claim limitation.
> Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed.
> Cir. 1998).  But disclosure of each element is not quite enough-this court
> has long held that "[a]nticipation requires the presence in a single prior art
> disclosure of all elements of a claimed invention arranged as in the claim."
> Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548 (Fed.Cir.1983)
> (citing Soundscriber Corp. v. United States, 175 Ct. Cl. 644, 360 F.2d 954,
> 960 (1966) (emphasis added)).

Id. at 1334-35.  See also Exergen Corp. v. Wal-Mart Stores, Inc., — F.3d —, 2009

WL 2366535 at *3 (Fed. Cir. 2009) (restating that, for a patent to be invalid as

anticipated, "a single prior art reference must expressly or inherently disclose each

claim limitation") (internal quotation marks and citation omitted).  Linear

Technology Corp. v. International Trade Com'n, 566 F.3d 1049, 1067 (Fed. Cir.

2009) (reiterating that "[a] prior art reference anticipates a patent claim if the

reference discloses, either expressly or inherently, all of the limitations of the

claim") (internal quotation marks and citation omitted).  Thus, differences between

the prior art and the claimed invention, however slight, invoke questions of

obviousness, rather than of anticipation.  Net MoneyIN, Inc. v. VeriSign, Inc., 545

F.3d 1359, 1371 (Fed. Cir. 2008).  In Cohesive Technologies, Inc. v. Waters

Corp., 543 F.3d 1351 (Fed. Cir. 2008), the Federal Circuit explained the

differences between anticipation and obviousness:

> While it is commonly understood that prior art references that
> anticipate a claim will usually render that claim obvious, it is not necessarily
> true that a verdict of nonobviousness forecloses anticipation.  The tests for
> anticipation and obviousness are different.  See, e.g., Duro-Last, Inc. v.
> Custom Seal, Inc., 321 F.3d 1098, 1107-08 (Fed. Cir. 2003) ("Succinctly
> put, the various unenforceability and invalidity defenses that may be raised
> by a defendant-inequitable conduct, the several forms of anticipation and
> loss of right under § 102, and obviousness under § 103-require different
> elements of proof.").  Obviousness can be proven by combining existing
> prior art references, while anticipation requires all elements of a claim to be
> disclosed within a single reference.  Compare MEHL/Biophile Int'l Corp. v.

Milgraum, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("To anticipate, a single reference must teach every limitation of the claimed invention."), with Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1577 (Fed. Cir. 1991) ("If it is necessary to reach beyond the boundaries of a single reference to provide missing disclosure of the claimed invention, the proper ground is not § 102 anticipation, but § 103 obviousness."). Moreover, obviousness requires analysis of secondary considerations of nonobviousness, while secondary considerations are not an element of a claim of anticipation.  Compare King Instrument Corp. v. Otari Corp., 767 F.2d 853, 857 (Fed. Cir. 1985) ("In a § 103 obviousness analysis, Graham [v. John Deere Co., 383 U.S. 1 (1966)] requires that the trier assess certain underlying facts: (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) the so-called 'secondary considerations.'"), with Hakim v. Cannon Avent Group, PLC, 479 F.3d 1313, 1319 (Fed. Cir. 2007) ("'Anticipation' means that the claimed invention was previously known, and that all of the elements and limitations of the claim are described in a single prior art reference.").  And although anticipation can be proven inherently, proof of inherent anticipation is not the same as proof of obviousness.  See Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1375 (Fed. Cir. 2005) ("[A] prior art reference without express reference to a claim limitation may nonetheless anticipate by inherency."); Trintec Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1296 (Fed. Cir. 2002) ("[O]bviousness is not inherent anticipation.").  Thus, "it does not follow that every technically anticipated invention would also have been obvious."  In re Fracalossi, 681 F.2d 792, 796 (CCPA 1982) (Miller, J., concurring).

Id. at 1364 (footnote omitted).  In Schumer, the Federal Circuit stressed that testimony concerning anticipation is insufficient, if it is merely conclusory.  308 F.3d at 1315-16.  The Schumer court also noted that "[i]t is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage."  Id. at 1316.

Herein, the Defendant argues that it is entitled to summary judgment, because the claims in question were anticipated by U.S. Patent No. 4,217,843

("Kraska").[20]  Kraska was issued in August, 1980, nearly 15 years before the priority date for the '826 and '875 patents.  Defendant has appended a copy of Kraska to its Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60), as Attachment 10.  According to Defendant, "Kraska teaches a metal saving (thus, cost saving) can end geometry (i.e., can end wall at a large angle) that [Plaintiffs claim] the '826 and '875 patents teach."  Doc. #60 at 34.  Additionally, Defendant argues that the pertinent claims in Plaintiffs' patents are invalid as being anticipated by Japanese Utility Model Application No. 57-112323 ("JP '323").[21]  According to Defendant, JP '323, which was published nearly 13 years before the priority date for the '826 and '875 patents,[22] teaches a can top that is to be rolled and connected to a can body and the same metal savings (and, thus, cost savings) that Plaintiffs claim the '826 and '875 patents teach.  Id. at 41.

In response to Defendant's argument in that regard, the Plaintiffs present two propositions.  Initially, Plaintiffs argue that the Defendant has failed to establish a prima facie case of anticipation "with testimony 'from one skilled in the art [that identifies] each claim element, and explains in detail how each claim element is disclosed in the prior art reference.'  Schumer v. Lab. Computer Sys.,

---

[20]For sake of consistency, this Court refers to that patent as Kraska, after its inventor, John L. Kraska, as have the parties.

[21]Plaintiffs refer to this prior art as "Toyo," presumably since the applicant was Toyo Seikan Kaisha Ltd.

[22]JP '323 was cited in the '875 patent as prior art.  A copy of the translation of JP '323, which Plaintiffs submitted to the Patent and Trademark Office, is Attachment 26 to Defendant's Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60), while Defendant's translation of it is Attachment 32 thereto.

308 F.3d 1304, 1315 (Fed. Cir. 2002)."  Doc. #70 at 34.  Alternatively, Plaintiffs

contend that their expert has presented evidence, supporting the proposition that

the claims of their patents are not anticipated by Kraska and/or JP '323, which

creates a genuine issue of material fact precluding the Court from entering

summary judgment in favor of Defendant on this issue.  As a means of analysis,

the Court will initially address the question of whether claim 14 of the '826 patent

is invalid as anticipated by JP '323, following which it will turn to the issue of

whether that claim is invalid as anticipated by Kraska.  The Court will then decide

those same two questions as they relate to claims 50 and 52 of the '875 patent.


a.  Is Claim 14 of the '826 Patent Invalid as Anticipated by JP '323?

The Defendant contends that JP '323 entitles it to summary judgment on

the basis of anticipation, because:

> JP '323 teaches a can end having a single can end wall angled at
> 20°-70° before and after seaming.  (JP '323, claims 1 and 2.)  Claim 1
> requires a "can top" (that is, a can end) that "is to be rolled and connected
> to a can body," having a can end wall (JP '323 calls the "chuck wall") with
> a pre-seaming lower portion "inclined at 20 to 70 degrees relative to a
> horizontal plane."  Claim 2 requires the upper portion of the can end wall to
> be angled at "about 45 degrees," which, read together with claim 1, requires
> in one embodiment a can end wall with upper and lower portions forming a
> single surface angled, preseaming, at 45°.  Figure 4 confirms this,
> illustrating a seamed can end that has a lower wall portion (18b) angled at
> approximately 45° and a substantially cylindrical upper portion (15) that has
> been reformed from its pre-seaming 45° angle.

Doc. #60 at 41.  Defendant contends further that inherent in JP '323 is a chuck

with two walls and a juncture around which its can end wall is upwardly bent

during the seaming process.  Id.  According to Defendant, that chuck has "an

upper wall angled at a substantially cylindrical orientation, and a lower wall angled

at 45° to match the 45° angle of the can end wall and maintain the angle during

seaming."  Id.  In addition, Defendant contends that a chuck with two walls and a

juncture around which the can end wall is bent during seaming is inherent in JP

'323.  Id.  Defendant supports these assertions by referring to Figures 4 and 5 of

JP '323.  Id. at 41-42.

In response, as to the '826 patent, Plaintiffs initially contend that the

Defendant has failed to establish a prima facie case of anticipation with regard to

JP '323, and that, if Defendant has met that burden, they (Plaintiffs) have

submitted evidence which demonstrates the existence of a genuine issue of

material fact on the question.  The Court addresses these two arguments in the

above order.

Plaintiffs describe the pertinent claims in the '826 patent, claims 13 and

14,[23] as follows:

---

[23]The Plaintiffs allege that the Defendant is infringing on claim 14 of the '826
patent.  Claim 13 is implicated because claim 14 is dependent upon it.  Claim 13
provides:
>    13.  A metal can end for use in packaging beverages under pressure and
>    adapted to be joined to a can body by a seaming process so as to form a
>    double seam therewith using a rotatable chuck comprising first and second
>    circumferentially extending walls, said first and second chuck walls forming
>    a juncture therebetween, said can end comprising:
>        a peripheral cover hook, said peripheral cover hook comprising a
>        seaming panel adapted to be formed into a portion of said double
>        seam during said seaming operation;
>        a central panel;
>        a wall extending inwardly and downwardly from said cover hook, a
>        first portion of said wall extending from said cover hook to a first
>        point on said wall, said first wall portion adapted to be deformed
>        during said seaming operation so as to be bent upwardly around said
>        juncture of said chuck walls at said first point on said wall, a second
>        portion of said wall extending from said first point to a second point
>        forming a lowermost end of said wall, a line extending between said

The 826 patent claims are directed to an unseamed can end that: (1) is "adapted to be joined to a can body by a seaming process ... using a ... chuck comprising first and second circumferentially extending walls ... having a juncture therebetween;" (2) has a lower wall portion "inclined ... at an angle of between 30° and 60°;" (3) has an upper wall portion "adapted to be deformed during [the] seaming operation so as to be bent upward around [the] juncture of [the] chuck walls;" and (4) has an "annular reinforcing bead" (Ex. 2, 826 patent at col. 10:37-65).

Doc. #70 at 34-35 (ellipses and brackets in the original).

Plaintiffs initially argue that Defendant has failed to establish a prima facie case of anticipation, because JP '323 does not expressly disclose a chuck of the type taught by claims 13 and 14 of the '826 patent.  In other words, Plaintiffs contend that Defendant must demonstrate that JP '323 necessarily used a chuck with two distinct and discernibly separate side surfaces, which, according to Plaintiffs, Defendant failed to do.[24]  Id. at 35.  As is discussed above, Defendant has supported that argument with references to JP '323 itself.  Moreover, in its Reply Memorandum, the Defendant points out that Scranton indicated in his Second Supplemental Report why JP '323 inherently teaches such a chuck.[25]  In

first and second points being inclined to an axis perpendicular to said central panel at an angle of between 30° and 60°.
'826 patent, Col. 10, lines 37-61.  Claim 14 of provides:
14.  The end according to claim 13, further comprising an annular reinforcing bead connected to said wall at said second point, said annular reinforcing bead connecting said wall to said central panel.
'826 patent, Col. 10, lines 62-65.

[24]In its Opinion construing claims, this Court concluded that "the term 'first and second circumferentially extending walls' means 'first and second encircling distinct, discrete and discernibly separate side surfaces of the chuck.'" Doc. #53 at 16.

[25]Scranton's Second Supplemental Report is Attachment 6 to Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60).  Scranton authenticated that Report with his Declaration which is Attachment 4 to that

particular, Scranton explained that it would not have been able to manufacture a carbonated beverage can and can top of the type described by JP '323, without using a chuck of the type described in claims 13 and 14 of the '826 patent.  See Doc. #60 at Attachment 6, p. 4-5.  Based upon the information set forth by Scranton in his Second Supplemental Report, as well as Figures 4 and 5 of JP '323, this Court rejects the Plaintiffs' argument that the Defendant failed to establish a prima facie case of anticipation, because JP '323 fails to expressly disclose a chuck of the type referred to in those claims.

In addition, Plaintiffs argue that JP '323 does not expressly disclose an unseamed can end and Defendant "has failed to show that [JP '323] inherently discloses an unseamed end having a wall that is that is bent upwardly around a chuck juncture by more than 10° during seaming, as required by the Court's claim construction."  Doc. #70 at 36.  Plaintiffs base that assertion on Scranton's supplemental deposition testimony, during which he indicated that in one embodiment of JP '323, it would be possible to make a can end wall that was bent upwardly less than 10°.  However, Scranton also testified that it was more likely that the can end wall would have been bent upwardly more than 10° during seaming.  Therefore, this Court cannot agree with Plaintiffs that the Defendant failed to present evidence sufficient to raise a prima facie case of anticipation, because JP '323 does not expressly or inherently disclose a chuck.

Alternatively, Plaintiffs contend that, even if the Defendant has met its burden of establishing such a prima facie case, evidence from Higham demonstrates that a genuine issue of material fact exists as to whether JP '323

_____

motion.

anticipated the chuck referred to in claims 13 and 14 of the '826 patent.  See Doc. #70 at 36 (arguing that "even if [Defendant] had made a prima facie case regarding [JP '323's] chuck, [Plaintiffs] presented evidence demonstrating a lack of inherency").  To support that statement, Plaintiffs have cited Higham's Supplemental Rebuttal Report.[26]  See Doc. #69 at Ex. D., p. 22-25.  Therein, Higham states that JP '323 does not disclose such a chuck with two distinct surfaces and an edge therebetween.  Id. at 10.  Higham bases his opinion in that regard on the lack of an explicit mention of any type of chuck in JP '323.  In its Reply Memorandum, Defendant argues that the information contained in Higham's Supplemental Rebuttal Report does not raise a genuine issue of material fact, because Higham merely focuses upon his hypothetical embodiment of JP '323, while ignoring claim 2 of that application, as well as other, more likely embodiments of JP '323.  Doc. #74 at 27.  For reasons which follow, this Court agrees with the Defendant.

Claims 1 and 2 of JP '323 provide:

1.  A can top comprising a plate-like chuck panel positioned between the chuck wall that is to be rolled and connected to a can body and a center panel constituting a central portion of said can top in such a manner that said plate-like chuck panel is inclined at 20 to 70 degrees relative to a horizontal plane.
2.  A can top as set forth in Claim 1, wherein said inclined angle of said chuck wall is approximately 45 degrees.

---

[26]Higham's Supplemental Rebuttal Report has been authenticated by his Declaration, an executed copy of which is Attachment 2 to Doc. #69.

Doc. #60 at Attachment 26, p. 1.[27]  As Defendant points out, Higham has focused solely on his embodiment of JP '323, in which the unseamed can end wall is bent upwardly less than 10° during the seaming process.  Although the evidence establishes that Higham's is one possible embodiment of JP '323, the Plaintiffs have not produced any evidence demonstrating that it is the only possible embodiment.  On the contrary, the uncontroverted evidence is that Higham's proposed embodiment is not the only possible or even the most likely such of JP '323.  It bears emphasis that Defendant need only demonstrate that a single embodiment of JP '323 anticipates claim 14 of the '826 patent in order for it to be entitled to summary judgment on the basis of anticipation.  Athrocare Corp. v. Smith & Nephew, Inc., 406 F.3d 1365, 1372 (Fed. Cir. 2005) (indicating that "it was error for the district court to limit the disclosure of the prior art reference to a preferred embodiment"); Ultradent Products, Inc. v. Life-Like Cosmetics, Inc., 127 F.3d 1065, 1068-69 (Fed. Cir. 1997 (noting that it is an error to construe prior art as limited to the preferred embodiment).  Therefore, the fact that Higham's embodiment of JP '323 does not disclose the type of chuck referred to in claim 13 the '826, as construed by this Court, does not create a genuine issue of material fact concerning the question of whether a chuck with two distinct and discernibly separate side surfaces is inherent in that Japanese Application, since the evidence establishes that other embodiments of same disclose such a chuck.

---

[27]Construing the evidence in the manner most favorable to the Plaintiffs, the party against whom summary judgment has been sought on the issue of anticipation, the Court will utilize the translation of JP '323 which they provided to the Patent and Trademark Office.

As is indicated above, the Plaintiffs have identified four elements in those claims, three of which, including the chuck, are set forth in claim 13.  See supra at 32 (quoting Doc. #70 at 34-35).  One of those other elements, a lower wall portion inclined at an angle between 30° and 60°, is disclosed by claim 1 of JP '323, which provides, in part, that the "chuck panel is inclined at 20 to 70 degrees relative to a horizontal plane."  The third element set forth in claim 13, that the upper wall portion is adapted to be bent upward around the juncture of the chuck walls during the seaming operation, is disclosed by Figures 4 and 5 of JP '323.  The fourth element referred to by Plaintiffs, an "annular reinforcing bead," is set forth in claim 14.  This Court has construed that term to mean an "outwardly concave, generally 'U' shaped, ring-like stiffening channel."  See Doc. #53 at 34.  In his Supplemental Report, Scranton explains that Figures 4 and 5 of JP '323 disclose such a stiffening channel.[28]  See Doc. #60 at Attachment 6, p. 5.  An examination of those Figures confirms that they disclose an "outwardly concave, generally 'U' shaped, ring-like stiffening channel."

Thus, this Court concludes that the evidence, construed in the manner most favorable to the Plaintiffs, demonstrates that claim 14 of the '826 patent is invalid as being anticipated by JP '323.  Accordingly, this Court sustains the Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60), as that motion relates to the issue of whether claim 14 of the '826 patent is invalid as anticipated by JP '323.  Claim 14 of the '826 patent is invalid for that reason.

---

[28]In his Supplemental Rebuttal Report (Doc. #69 at Attachment 2), Higham only disputes that claim 14 is anticipated by JP '323, because he does not believe that the Japanese application anticipates claim 13.  He has failed to separately opine that JP '323 does not disclose an annular reinforcing bead, as this Court has construed that phrase.

b.  Is Claim 14 of the '826 Patent Invalid as Anticipated by Kraska?

Alternatively, the Defendant argues that the uncontroverted evidence demonstrates that claim 14 of the '826 patent is invalid as anticipated by Kraska. In particular, the Defendant asserts that Kraska anticipates the annular reinforcing bead and the three elements of claim 13 of the '826 patent, to wit: a can end wall angled at 30° to 60°; a chuck with two walls and a juncture therebetween; and a can end wall that is bent upwardly around the chuck juncture.  Without discussing anticipation of the second and third elements or the annular reinforcing bead set forth in claim 14 of the '826 patent, this Court, construing the evidence in the manner most favorable to the Plaintiffs, concludes that there is a genuine issue of material fact as to whether Kraska discloses a can end wall angled at 30° to 60°. The '826 patent states that Kraska discloses such can end wall angled at approximately 24°.  See '826 patent at Col. 1, lines 39-41.  Moreover, in his Supplemental Rebuttal Report, Higham indicates that Kraska provides for an angle of less than 30 degrees.  See Doc. #69 at Ex. D, p. 18.  Accordingly, this Court overrules the Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60), as that motion relates to the issue of whether claim 14 of the '826 patent is invalid as anticipated by Kraska.

c.  Are Claims 50 and 52 of the '875 Patent Invalid as Anticipated by either JP '323 or Kraska?

Defendant contends that it is entitled to summary judgment on the Plaintiffs' claims that it has infringed on claims 50 and 52 of the '875 patent, because they are invalid as anticipated by JP '323.  Claim 50 of that patent provides:

50.  A method of forming a double seam between a can body and a can end intended for use in packaging a carbonated beverage, said method comprising the steps of:

a) providing a can end having (i) a circumferentially extending peripheral cover hook, said peripheral cover hook comprising a seaming panel to be formed into a portion of said double seam during a seaming operation, (ii) an annular reinforcing bead, and (iii) a circumferentially extending wall extending from said seaming panel to said reinforcing bead, said wall and said reinforcing bead forming a transition therebetween;

b) placing said cover hook of said can end into contact with a circumferentially extending flange of a can body;

c) providing a rotatable chuck comprising first and second circumferentially extending walls, said second chuck wall depending from said first chuck wall so as to form a juncture therebetween;

d) bringing said chuck into engagement with said can end; and

e) performing said seaming operation by placing one or more seaming rolls into contact with said peripheral cover hook of said can end while said can end rotates so as to deform said seaming panel of said cover hook and to bend a portion of said can end wall upwardly around said juncture of said chuck walls at a first location on said can end wall, a straight line extending from said first location on said can end wall to said transition between said can end wall and said reinforcing bead inclined between about 20° and about 60° with respect to said axial centerline both before and after said seaming operation.

'875 patent, Col. 15, lines 8-41.  Claim 52 of the '875 patent provides:

52. The method according to claim 50, wherein said line extending from said first location to said transition is inclined between about 30° and about 50° with respect to said axial centerline of said can end both before and after performing said seaming operation.

Id. at Col. 15, lines 46-50.

The parties do not contend that there are material distinctions between claims 13 and 14 of the '826 and claims 50 and 52 of the '875 patent.  Therefore, the Court reaches the same conclusions as to whether the evidence raises genuine issues of material fact concerning the question of whether claims 50 and 52 of the '875 patent are invalid as anticipated by JP '323 and/or Kraska that it reached

concerning that question, with respect to claim 14 of the '826 patent.
Accordingly, for the reasons set forth above in connection with its resolution of the
question of whether claim 14 of the '826 patent is invalid as anticipated by JP
'323, this Court concludes that the evidence fails to raise a genuine issue of
material fact as to whether claims 50 and 52 of the '875 patent are invalid
because they were anticipated by the Japanese Application.  Therefore, this Court
sustains the Defendant's Motion for Summary Judgment on Infringement and
Invalidity (Doc. #60), as it relates to the issue of whether claims 50 and 52 of the
'875 patent are invalid as anticipated by JP '323.  In addition, for the reasons set
forth above in connection with its resolution of the question of whether claim 14 of
the '826 patent is invalid as anticipated by Kraska, this Court concludes that the
evidence raises a genuine issue of material fact as to whether claims 50 and 52 of
the '875 patent are invalid because they were anticipated by Kraska.  Accordingly,
this Court overrules the Defendant's Motion for Summary Judgment on
Infringement and Invalidity (Doc. #60), as that motion relates to the issue of
whether claims 50 and 52 of the '875 patent are invalid as anticipated by
Kraska.[29]

4.  Invalidity for Obviousness

As indicated, the Defendant argues that it is entitled to summary judgment,
because claim 14 of the '826 and claims 50 and 52 of the '875 patents are invalid
for obviousness, in light of JP '323 and Kraska, as well as another Japanese

---

[29]The Court's conclusion in that regard is equally applicable to claim 61 of the '875
patent.

Application, JP '107.  Plaintiffs disagree with Defendant, although they do not

contend that they are entitled to summary judgment on the question of

obviousness.  As a means of analysis, the Court will initially discuss the applicable

legal principles, following which it will turn to the parties' arguments in support of

and in opposition to the Defendant's request for summary judgment.

Obviousness is addressed in 35 U.S.C. § 103.  In KSR Intern. Co. v.

Teleflex, Inc., 550 U.S. 398 (2007), the Supreme Court noted that:

> Section 103 forbids issuance of a patent when "the differences
> between the subject matter sought to be patented and the prior art are such
> that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said
> subject matter pertains."

Id. at 406.  Therein, the Court restated the analytical framework for applying the

statutory language of § 103:

> "Under § 103, the scope and content of the prior art are to be
> determined; differences between the prior art and the claims at issue are to
> be ascertained; and the level of ordinary skill in the pertinent art resolved.
> Against this background the obviousness or nonobviousness of the subject
> matter is determined.  Such secondary considerations as commercial
> success, long felt but unsolved needs, failure of others, etc., might be
> utilized to give light to the circumstances surrounding the origin of the
> subject matter sought to be patented."

Id. (quoting Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966)).

If a court applying that analysis concludes that the claimed subject matter of a

patent is obvious, the claim is invalid under § 103.  Id.  The KSR Court also

stressed, however:[30]

---

[30]In KSR Intern., the Supreme Court rejected the TSM test adopted by the Federal
Circuit, which focused upon teaching, suggestion, or motivation.  Under the TSM
test, "a patent claim is only proved obvious if the prior art, the problem's nature, or
the knowledge of a person having ordinary skill in the art reveals some motivation

> Neither the enactment of § 103 nor the analysis in <u>Graham</u> disturbed this Court's earlier instructions concerning the need for caution in granting a patent based on the combination of elements found in the prior art.  For over a half century, the Court has held that a "patent for a combination which only unites old elements with no change in their respective functions … obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men."  <u>Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.</u>, 340 U.S. 147, 152 (1950).  This is a principal reason for declining to allow patents for what is obvious. The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.

<u>Id</u>. at 415-16.  When determining whether a patent is invalid for obviousness, a court must analyze the patent on a claim by claim basis.  <u>Aventis Pharma Deutschland GmbH v. Lupin, Ltd.</u>, 499 F.3d 1293, 1303 (Fed Cir. 2007); <u>DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.</u>, 464 F.3d 1356, 1372 (Fed. Cir. 2006), <u>cert</u>. <u>denied</u>, 127 S.Ct. 2937 (2007).  Of course, the issue of whether a patent would have been obvious at the time of invention is a question of law.  <u>Bayer Schering Pharma AG v. Barr Laboratories, Inc.</u>, — F.3d —, 2009 WL 2385095 at *4 (Fed. Cir. 2009).

As indicated, Defendant asserts that claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid for obviousness.  Plaintiffs, in contrast, argue that the Defendant has failed to demonstrate that it is entitled to summary judgment on the issue of obviousness, because the Defendant has not met its initial burden of pointing to evidence regarding the scope and content of prior art, it has failed to present evidence of the ordinary skill in the art, and, further, there are fact questions concerning the secondary factors identified by the Supreme Court in

---

or suggestion to combine the prior art teachings."  550 U.S. at 407 (internal quotation marks and citation omitted).

<u>Graham</u>.  <u>See</u> Doc. #70 at 40-42.  As a means of analysis, this Court finds it necessary to discuss only the Plaintiffs' first and second assertions.

<u>First</u>, the Plaintiffs argue that, rather than presenting evidence to support the scope and content of prior art, Defendant has merely relied upon the arguments from its counsel.  In support of that argument, Plaintiffs have cited <u>Johnson v. IVAC Corp.</u>, 885 F.2d 1574 (Fed. Cir. 1989).  Therein, in the course of rejecting the plaintiff's argument that the defendant's accused product infringed under the doctrine of equivalents, the court noted that plaintiff had failed to present evidence supporting its contention in that regard and noted that an argument from counsel "is no substitute for evidence."  <u>Id</u>. at 1581.  Although the general proposition that the arguments of counsel are not a substitute for evidence is unassailable, this Court is unable to agree with Plaintiffs' contention that Defendant is relying on such arguments herein, rather than upon evidence.  Defendant has provided evidence concerning the scope and content of prior art, by supplying copies of Kraska and JP '323, both of which are part of the prosecution history of the patents-in-suit, as well as commentary from Scranton, Defendant's expert witness, on that prior art.  <u>See</u> Doc. #60 at Ex. 6.  Accordingly, this Court rejects the Plaintiffs' argument that the Court must reject Defendant's request for summary judgment on the issue of obviousness, because that request is based upon arguments from its counsel, rather than upon evidence.

In support of this proposition, the Plaintiffs also contend that, irrespective of whether Defendant has supported this branch with evidence, as opposed to nothing more than the arguments of counsel, the information provided by their expert witness, Higham, demonstrates that the evidence raises a genuine issue of

material fact on the issue of obviousness.  According to Plaintiffs, their argument in that regard is demonstrated by the disagreement between their expert witness and Defendant's such, concerning the scope of Kraska and JP '323.  Doc. #70 at 40.  Plaintiffs have not elaborated on that argument; however, the Court assumes that they base it upon their reasons for contending that the evidence raises a genuine issue of material fact concerning anticipation, as a consequence of Higham's disagreement with Scranton concerning that prior art.  The Court rejects Plaintiffs' argument in that regard, given that the legal standards governing contentions that one or more claims in a patent are invalid as anticipated are not the same as the standards which govern resolution of the issue of whether such claims are invalid for obviousness.

Second, Plaintiffs contend that Defendant has failed to present evidence of the level of ordinary skill in the art.  In KSR, the Supreme Court quoted the following passage from Graham, in which the Court had stressed that "'[u]nder § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.'"  550 U.S. at 406 (quoting Graham, 383 U.S. at 17-18) (emphasis added).  In Ruiz v. A.B. Chance Co., 234 F.3d 654 (Fed. Cir. 2000), the court discussed the importance of evidence of the level of ordinary skill in the pertinent art in resolving a challenge to the validity of a patent on the basis of obviousness and listed the factors which may be considered in determining that level:

> The determination of the level of ordinary skill in the art is an integral part of the Graham analysis.  See Custom Accessories[, Inc. v. Jeffery-Allan Industries, Inc., 807 F.2d 955, 962 (Fed. Cir. 1986)] ("Without [a determination of the level of ordinary skill in the art], a district court cannot

> properly assess obviousness because the critical question is whether a
> claimed invention would have been obvious at the time it was made to one
> with ordinary skill in the art.") (internal citation omitted).  Factors that may
> be considered in determining the ordinary level of skill in the art include:
> 1) the types of problems encountered in the art; 2) the prior art solutions to
> those problems; 3) the rapidity with which innovations are made; 4) the
> sophistication of the technology; and 5) the educational level of active
> workers in the field.  See id. at 962, (citing Envtl. Designs, Ltd. v. Union Oil
> Co., 713 F.2d 693, 697 (Fed.Cir.1983)).  "Not all such factors may be
> present in every case, and one or more of them may predominate."  Id.

Id. at 666-67.

The Defendant did not present evidence of the level of ordinary skill in the

art with its motion.  Although it attempted to overcome that shortcoming with its

Reply Memorandum (Doc. #74), this Court concludes Defendant has fallen short of

the mark in that regard.[31]  The Defendant has merely cited approximately 50 pages

from a transcript of one of Higham's depositions and argues that it demonstrates

that the parties no longer dispute the level of ordinary skill in the art.  See

Doc. #74 at 32.  Therein, Higham testified about his opinion concerning the

educational background and experience of a person of ordinary skill in the art to

which the '826 and '875 patents pertain.  This Court cannot agree with

Defendant, since, after construing that 50-page excerpt from Higham's April 18,

2007, deposition in the manner most favorable to the Plaintiffs, against whom

summary judgment is sought, the Court cannot conclude that the parties have

resolved their dispute about what constitutes ordinary skill in the art.  Thus,

---

[31]For present purposes, this Court assumes, merely for sake of argument, that it is
appropriate to consider evidence to support a party's position that it is entitled to
summary judgment on an issue on which it bears the burden of proof by clear and
convincing evidence, which is not submitted until the proponent files its reply in
support of its request for summary judgment.  Herein, on this issue, this Court has
considered such.

although the educational level of workers in the field is one of the pertinent factors identified by the Federal Circuit in Ruiz, this Court concludes that there is a genuine issue of material fact as to the educational level of those of ordinary skill in the art. Moreover, Defendant has not pointed to evidence, establishing the other factors identified in Ruiz.

In the absence of evidence as to the level of ordinary skill in the art, this Court is unable to perform the analysis mandated by the Supreme Court in Graham and reaffirmed by that Court in KSR, utilized to determine whether a patent is invalid for obviousness.  Since this Court is unable to perform that analysis, it is compelled to overrule the Defendant's Motion for Summary Judgment (Doc. #60), as it relates to its assertion that claim 14 of the '826 patent and claims 50 and 52 of the '875 patent are invalid for obviousness.

To summarize its rulings on the parties' requests for summary judgment on the question of invalidity, the Court has concluded that: 1) the Plaintiffs, rather than Defendant, are entitled to summary judgment on the question of whether the pertinent claims of the '826 and '875 patents are invalid for indefiniteness; 2) the Defendant, rather than Plaintiffs, is entitled to summary judgment on issue of whether those claims are invalid for violating the written description requirement; 3) the Defendant is entitled to summary judgment on the issue of whether those claims are invalid as anticipated by JP '323; and 4) the Defendant is not entitled to summary judgment on the issues of whether those claims are invalid as anticipated by Kraska or for obviousness.

B.  Infringement

Given that this Court has concluded that claim 14 of the '826 patent and claims 50, 52 and 61 of the '875 patent are invalid for failure to comply with the written description requirement and as anticipated by JP '323, it is not necessary to address the parties' arguments in support of and in opposition to the branch of Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60), raising the issue of infringement.  Accordingly, the Court overrules, as moot, the branch of Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60), with which it requests summary judgment on the issue of infringement.

Based upon the foregoing, the Court sustains in part, overrules in part and overrules, as moot, in part Defendant's Motion for Summary Judgment on Infringement and Invalidity (Doc. #60).  In addition, the Court sustains in part and overrules in part Plaintiffs' Cross Motion for Partial Summary Judgment on Invalidity (Doc. #70) and overrules, as moot, Defendant's Motion for Partial Summary Judgment on Willfulness (Doc. #80).

Judgment is to be entered in favor of the Defendant and against Plaintiffs, dismissing Plaintiffs' Amended Complaint (Doc. #7) with prejudice, and, on Defendant's Counterclaim (Doc. #11), declaring that claim 14 of U.S. Patent No. 6,935,826 ("the '826 patent") and claims 50, 52 and 61 of U.S. Patent No. 6,848,875 ("the '875 patent") are invalid.[32]

---

[32]The aspects of Defendant's Counterclaim (Doc. #11), with which it seeks declarations that it has not infringed on Plaintiffs' patents and that those patents are unenforceable because of inequitable conduct are ordered dismissed as moot.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


September 8, 2009


/s/ Walter Herbert Rice

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record.

In addition, Defendant's request for an award of attorney's fees set forth in that pleading can be addressed in a post-judgment proceeding.  See White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445 (1982) (noting that costs and attorney's fees may be awarded in post-judgment proceedings).