IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CROWN PACKAGING TECHNOLOGY, :
INC., et al., :
 :
    Plaintiffs, :
   Case No. 3:05cv281
    vs. :
   JUDGE WALTER HERBERT RICE
BALL METAL BEVERAGE :
CONTAINER CORP., :
 :
    Defendant. :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #60); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #69); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

---

The Plaintiffs bring this litigation, alleging that the Defendant Ball Metal Beverage Container Corp. ("Defendant" or "Ball"), has infringed on certain claims set forth in two patents owned by Plaintiff Crown Packaging Technology, Inc., and licensed to Plaintiff Crown Cork & Seal, Inc.,[1] to wit: U.S. Patent Nos. 6,935,826 ("the '826 patent") and 6,848,875 ("the '875 patent"). These two patents relate

---

[1] This Court will refer to those two entities collectively as "Crown" or as "Plaintiffs."

to the ends or lids of metal beverage cans used for beer and soft drinks and the method of securing the ends of the cans onto the bodies or can end walls of the cans,[2] a process which the parties and the patents refer to as seaming. In particular, the Plaintiffs have alleged that Defendant Ball is infringing on Claim 14 of the '826 patent and Claims 50 and 52 of the '875 patent.[3]

Claim 14 of the '826 patent is dependent upon Claim 13. Claims 13 and 14 provide:

13. A metal can end for use in packaging beverages under pressure and adapted to be joined to a can body by a seaming process so as to form a double seam therewith using a rotatable chuck comprising first and second circumferentially extending walls, said first and second chuck walls forming a juncture therebetween, said can end comprising:
> a peripheral cover hook, said peripheral cover hook comprising a seaming panel adapted to be formed into a portion of said double seam during said seaming operation;
> a central panel;
> a wall extending inwardly and downwardly from said cover hook, a first portion of said wall extending from said cover hook to a first point on said wall, said first wall portion adapted to be deformed during said seaming operation so as to be bent upwardly around said juncture of said chuck walls at said first point on said wall, a second portion of said wall extending from said first point to a second point forming a lowermost end of said wall, a line extending between said first and second points being inclined to an axis perpendicular to said central panel at an angle of between 30° and 60°.

---

[2]Colloquially, a can end is the top of a can.

[3]In their Amended Complaint (Doc. #7), Plaintiffs also allege that Defendant is infringing upon Claim 61 of the '875 patent, which is dependant upon Claim 50. Since this Court concludes that Claim 50 of the '875 patent is not infringed upon by the CDL+ can ends (those manufactured by the Defendant), the Defendant does not infringe upon Claim 61.

- 2 -

> 14. The end according to claim 13, further comprising an annular reinforcing bead connected to said wall at said second point, said annular reinforcing bead connecting said wall to said central panel.

'826 patent, Col. 10, lines 62-65.

Claim 50 of the '875 patent provides:

> 50. A method of forming a double seam between a can body and a can end intended for use in packaging a carbonated beverage, said method comprising the steps of:
> a) providing a can end having (i) a circumferentially extending peripheral cover hook, said peripheral cover hook comprising a seaming panel to be formed into a portion of said double seam during a seaming operation, (ii) an annular reinforcing bead, and (iii) a circumferentially extending wall extending from said seaming panel to said reinforcing bead, said wall and said reinforcing bead forming a transition therebetween;
> b) placing said cover hook of said can end into contact with a circumferentially extending flange of a can body;
> c) providing a rotatable chuck comprising first and second circumferentially extending walls, said second chuck wall depending from said first chuck wall so as to form a juncture therebetween;
> d) bringing said chuck into engagement with said can end; and
> e) performing said seaming operation by placing one or more seaming rolls into contact with said peripheral cover hook of said can end while said can end rotates so as to deform said seaming panel of said cover hook and to bend a portion of said can end wall upwardly around said juncture of said chuck walls at a first location on said can end wall, a straight line extending from said first location on said can end wall to said transition between said can end wall and said reinforcing bead inclined between about 20° and about 60° with respect to said axial centerline both before and after said seaming operation.

'875 patent, Col. 15, lines 8-41.

> Claim 52 of the '875 patent provides:

> 52. The method according to claim 50, wherein said line extending from said first location to said transition is inclined between about 30° and about 50° with respect to said axial centerline of said can end both before and after performing said seaming operation.

Id. at Col. 15, lines 46-50.

According to the Plaintiffs, these patents allow a significant saving in the amount of metal necessary for can ends, without requiring an enormous outlay of capital, thus cutting costs for users, see Doc. #23 at 2-3, 4. This is accomplished by altering the geometry of the can end and modifying the seaming process. Id. at 4. Plaintiffs indicate that metal is saved, because the new geometry increases the strength of the cans, permitting the cans to be thinner. Id. at 6.

In its Decision of September 8, 2009 (Doc. #101), this Court granted the Defendant's request for summary judgment, concluding that the patents-in-suit were invalid for violating the written description requirement, set forth in 35 U.S.C. § 112, and as anticipated by Japanese Patent Application No. 57-117323 by Toyo Seikan Kaisha, Ltd. ("Toyo"). As a consequence, the Court sustained the Defendant's Motion for Summary Judgment (Doc. #60), as it relates to the question of invalidity, and overruled, as moot, without reaching the merits of, its Motion for Summary Judgment on the Issue of Willfulness (Doc. #80), on the issue of whether Crown would be entitled to an award of additional damages, if it prevailed in this litigation.[4] Nor did it reach the issue of infringement of Plaintiffs' patents by Defendant.

Plaintiffs appealed this Court's decision to the Federal Circuit, which decided, as a matter of law, that the patents-in-suit met the written description requirement set forth in 35 U.S.C. § 112, thus reversing this Court's entry of summary judgment on this issue in favor of Ball and entering same in favor of

---

[4]In a Decision entered after remand from the Federal Circuit, this Court overruled Defendant's Motion for Summary Judgment on the Issue of Willfulness (Doc. #80). See Doc. #122.

Crown. See Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp., 635 F.3d 1373 (Fed. Cir. 2011). In addition, that court, with one Judge dissenting, concluded that genuine issues of material fact precluded this Court's entry of summary judgment in favor of Ball on the question of whether the patents-in-suit were invalid, in violation of 35 U.S.C. § 102, as being anticipated by Toyo.

As a consequence of the Federal Circuit's decision, this Court herein sustains the Plaintiffs' Motion for Partial Summary Judgment (Doc. #69), as it relates to the assertion that they are entitled to summary judgment on the Defendant's contention that the claims of the '826 and '875 patents are invalid for violating the written description requirement, and overrules that motion, as it relates to the assertion therein that they are entitled to summary judgment on the Defendant's contention that those patents are invalid as anticipated by Toyo. In addition, the Court overrules the Defendant's Motion for Summary Judgment (Doc. #60), to the extent that it is argued therein that the asserted claims of the '826 and '875 patents are invalid for failing to comply with the written description requirement and as anticipated by Toyo.

As a result of the rulings by the Federal Circuit, this Court is presented with issues of invalidity and infringement. As a means of analysis, the Court will initially discuss the Ball's contentions concerning invalidity, following which it will turn to their arguments concerning infringement. However, before engaging in that analysis, the Court will set forth the procedural standards it must apply whenever it rules on a motion for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It

is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade

through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As indicated, the Defendant seeks summary judgment on issues of invalidity and infringement of the '826 and '875 patents. As a means of analysis, the Court will initially address the parties' arguments concerning invalidity, before turning to their contentions about infringement.

I. Invalidity

Defendant initially contended that the asserted claims of the '826 and/or the '875 patents were invalid for indefiniteness, for failing to comply with the written description requirement, as anticipated and obvious in light of U.S. Patent No. 4,217,843 ("Kraska") and as anticipated and obvious in light of Toyo.[5] Plaintiffs

---

[5]Throughout this Decision, the Court at times refers to both Kraska and Toyo, while at other times it mentions one or the other alone. Which or both of the two

- 8 -

not only disagreed with Defendant's assertions concerning invalidity, they contended that they are entitled to summary judgment on Defendant's contention that the asserted claims are invalid for failure to comply with the written description requirement. An assertion that a patent is void for indefiniteness raises the question of whether it has failed to comply with the written description requirement. Telcordia Technologies, Inc. v. Cisco Systems, Inc., 612 F.3d 1365 (Fed. Cir. 2010. Therefore, the rejection of Ball's assertion that the patents-in-suit are invalid for failing to comply with the written description requirement disposes of its contention that it is entitled to summary judgment on the basis of indefiniteness. Consequently, as a result of the rulings by the Federal Circuit, all of the Defendant's challenges to the validity of the '826 and '875 patents have been resolved, except for its argument that the patents-in-suit are invalid based upon Kraska. However, given that the Court concludes that the Defendant's can ends do not infringe, it is not necessary to consider whether the patents-in-suit are invalid in light of Kraska. Accordingly, the Court now turns to the issue of whether the Defendant's can ends infringe on the Plaintiffs' patented can ends. The parties

---

patents to which the Court refers depends upon the context. Before this matter was appealed, Ball relied on both Toyo and Kraska, in arguing that the '826 and '875 patents were invalid. This Court, in its Decision of September 8, 2009 (Doc. #101), and the Federal Circuit in its Opinion addressed only the impact of Toyo on Defendant's invalidity defenses, as a result of which this Court herein mentions only that patent when discussing that Decision and Opinion. Neither this Court in its earlier Decision nor the Federal Circuit in its Opinion addressed Kraska. Conversely, the Court mentions only Kraska in this Decision, when it discusses post-remand matters, since the Federal Circuit decided that Ball is not entitled to summary judgment on the basis of its contention that Toyo renders the '826 and '875 patents invalid.

refer to the Defendant's can end as the CDL+ can end. The Court will follow that convention.

## II. Infringement

As Ball points out, infringement is a two-step process. The first is claim construction which is the sole province of a court. Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). This Court has engaged in that process and issued its Markman opinion on April 18, 2008 (see Doc. #53), although the parties take decidedly different views of how the Court construed the claims. The second step of the infringement analysis is to determine whether the accused product is within the scope of the construed claims. General Mills, Inc. v. Hunt Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997). As the Federal Circuit noted in Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263 (Fed. Cir. 2004), "[l]iteral infringement first requires the trial court to interpret the claims to determine their scope and meaning." Id. at 1273. In MicroStrategy, Inc. v. Business Objects, S.A., 429 F.3d 1344 (Fed. Cir. 2005) the Federal Circuit reviewed the manner in which infringement is assessed:

> "[I]nfringement is assessed by comparing the accused device to the claims[;] the accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1732 (Fed.Cir. 2005). If, however, even one claim limitation is missing or not met, there is no literal infringement. Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed.Cir. 1998).

Id. at 1352. In Duramed Pharmecuticals, Inc. v. Paddock Laboratories, Inc., 644 1376 (Fed. Cir. 2011), the Federal Circuit reviewed the limitations on the doctrine of equivalents:

> Because during prosecution Duramed narrowed the scope of the patent's claims in response to a prior art rejection, a presumption of prosecution history estoppel applies. See Festo [Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1366-67 (Fed.Cir. 2003) (en banc)] ("Festo IX"). Nonetheless, Duramed may rebut that presumption by showing, inter alia, the "alleged equivalent would have been 'unforeseeable at the time of the amendment and thus beyond a fair interpretation of what was surrendered.'" Id. at 1369 (quoting Festo [Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 736 (2002) (" Festo VIII"). . "[A]n alternative is foreseeable if it is disclosed in the pertinent prior art in the field of the invention. In other words, an alternative is foreseeable if it is known in the field of the invention as reflected in the claim scope before amendment." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 493 F.3d 1368, 1379 (Fed. Cir.2007) ("Festo X"). Foreseeability is a question of law based on underlying issues of fact. Id. at 1375.

Id. at 637-38. With that overview in mind, the Court turns to the parties' arguments in support of and in opposition to the Defendant's assertion that it is entitled to summary judgment

Initially, Ball argues that the CDL+ can end does not infringe upon Plaintiffs' can ends, because Plaintiffs' can end is not "deformed," as that term is used in Claim 13 of the '826 patent and Claim 50 of the '875 patent. This argument raises the question of claim construction and whether Plaintiffs disclaimed a broad reading of "deformed" during the prosecution of the patents-in-suit. See e.g., Gillespie v. Dywidag Systems, International, UsSA, 501 F.3d 1285, 1290 (Fed. Cir. 2007) (noting that the "patentee is held to what he declares during the prosecution of his patent"); Seachange Int'l, Inc. v. C-Cor Inc., 413 F.3d 1361, 1373 (Fed.Cir.2005) (noting that "[w]here an applicant argues that a claim

- 11 -

possesses a [certain] feature in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language"). During claim construction, this Court noted that, through the prosecution of the '826 and '875 patents, the Plaintiffs had disclaimed a broad interpretation of "deformed," in order to overcome prior art. The Court interpreted "deformed" to mean "to become substantially cylindrical." Doc. #53 at 29. In reaching that conclusion, the Court rejected Plaintiffs' proposed construction of the term, as meaning "to have its shape altered." In rejecting that proposed construction, the Court noted that the Plaintiffs had disclaimed such during the prosecution of the '826 and '875 patents. See Id. at 28 (noting that Plaintiffs had submitted to the patent examiner the Declaration of Martin Higham ("Higham"), Plaintiffs' expert witness, stating that conventional thinking in the can industry was that a can end should be bent no more that 10º and that Higham's Declaration demonstrates that Plaintiffs disclaimed that the upper portion of the can end wall on their invention was altered by only 10º, i.e., in other words, Plaintiffs claimed said upper portion was altered by more than 10%.

The Defendant argues that CDL+ can ends do not infringe on Claim 13 of the '826 patent and/or Claim 50 of the '875 patent, because the CDL+ can end wall is not bent more than about 10º during the seaming process and that, therefore, they are not deformed. According to Defendant, Plaintiffs disclaimed can ends that were bent only 10º, as this Court noted during the claims construction process. Indeed, during that process, Plaintiffs themselves have indicated that the can end wall must be bent between 30º and 60º. See Doc. #23 at 12, fn. 2. The Plaintiffs do not dispute the foregoing; rather, they contend that

there is a genuine issue of material fact of the amount of bending the CDL+ can end wall goes through during the seaming process.

The Defendant relies upon the Declaration of its expert witness, Dean Scranton ("Scranton"), wherein he states that the CDL+ can ends are bent no more than 10° during the seaming process.[6] In addition, Scranton points to statements of Plaintiffs' expert witness, Higham, to the examiner who approved the '826 and '875 patents to the effect that the can ends of those patents can be distinguished from prior art, because "one skilled in the art would not have been motivated to increase the overall angle of inclination of the can end wall into the 30° to 60° range." Higham Declaration of July 29, 2004 to Patent Examiner.[7] As indicated, Plaintiffs contend that the CDL+ can end wall is bent more than 10° during the seaming process. Ball has clearly demonstrated that Higham used a different methodology in measuring the amount of bending a can end wall of a CDL+ can undergoes during the seaming process. See Doc. #73 at 7-10.

In sum, Plaintiffs do not dispute that they disclaimed a broad interpretation to the word the word "deformed," as used in the '826 and '875 patents, during the prosecution of those patents. Indeed, Plaintiffs do not dispute that conventional thinking in the can industry is that a can end should be bent no more than 10° and have stated that their can end walls must be bent 30° to 60°. The Court has concluded that the evidence fails to raise a genuine issue of material fact as to whether the CDL+ can end walls are bent more than 10° during the seaming

---

[6]Scranton's Declaration is Exhibit 3 to Defendant's Motion for Summary Judgment (Doc. #30).

[7]That Declaration is Exhibit 4 to Doc. #30.

- 13 -

process and that, therefore, they are not "deformed." As a consequence, CDL+ cans do not infringe on those claimed by Crown in the '826 and '875 patents.[8]

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. #60), to extent that with that motion, Ball asserts that the CDL+ can end walls are not deformed during the seaming process and that, therefore, they do not infringe on Claim 13 of the '826 patent and Claim 50 of the '875 patent. In accordance with the decision by the Federal Circuit in this litigation, the Court overrules that motion to the extent that Ball sought summary judgment on the written description requirement and the question of whether the patents were invalid as anticipated by Toyo. In addition, the Court sustains in part and overrules in part Plaintiffs' Cross Motion for Partial Summary Judgment (Doc. #69), sustaining that motion as it relates to Ball's assertion that the '826 and '875 patents are invalid for failing to comply with the written description requirement. Otherwise, that motion is overruled.

Based upon the foregoing, the Court directs that judgment be entered in favor of Defendant and against Plaintiffs.

---

[8]As a consequence of the Court's conclusion in that regard, it is not necessary to consider the Ball's other contentions as to why the CDL+ cans do not infringe on Claim 13 of the '826 patent and Claim 50 of the '875 patent. In addition, the Court need not consider the Defendant's contention that the patents-in-suit are invalid, as anticipated and obvious in view of Kraska.

- 14 -

- 15 -

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

January 31, 2012

/s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.